IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DANNY RAY SHAFER,           )<br>                             )<br>     Plaintiff,             )<br>v.                           )<br>                             )<br>HOUSTON TOMAN, JOSH COOK,    )<br>*et al.*,                    )<br>                             )<br>     Defendants.            )| Civil Case No. 5:21-cv-00014<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

## MEMORANDUM OPINION

This is a pro se action brought by Danny Ray Shafer against Assistant Commonwealth Attorney Amanda Strecky, Shenandoah County Sheriff Timothy Carter, Deputy Sheriff Josh Cook, and Deputy Sheriff Houston Toman. (Compl., Dkt. No. 2.)[1] Defendants Cook and Toman move for summary judgment. (Dkt. No. 24.) Also before the court is plaintiff's motion for a hearing and for judgment in his favor. (Dkt. No. 28.)

Prior to filing this motion for summary judgment, all defendants in this matter, including Cook and Toman, filed motions to dismiss. (Dkt. Nos. 11, 16.) On March 23, 2022, the court issued an opinion and order granting in part and denying in part the motions to dismiss. (Dkt. Nos. 31, 32.) The court also recognized, pursuant to a liberal construction of plaintiff's pro se complaint, various claims that plaintiff had plausibly alleged but had not been addressed in defendants' motions to dismiss. (Dkt. No. 31 at 8–9; Dkt. No. 32.)[2]

---

[1] Plaintiff also named "Sheriff Department" as a defendant. The court dismissed that entity from this case on March 23, 2022. (Dkt. No. 32.)

[2] The claims that survived the motions to dismiss are plaintiff's state law claims for defamation and malicious prosecution against Strecky, plaintiff's federal law claims for excessive force against Cook and Toman, plaintiff's federal law claim for covering-up misconduct against Carter, plaintiff's state law claims for assault and battery against Cook and Toman, and plaintiff's state law defamation claim against Cook.

The court has reviewed the parties' submissions and determines that a hearing is not necessary to resolve these motions. Defendants' motion for summary judgment will be granted, and plaintiff's motion for judgment and a hearing will be denied.[3]

## I.  BACKGROUND

### A. Plaintiff's Allegations

Shafer was arrested for a DUI on January 16, 2018, while he was eating lunch at home with his eight-year-old daughter. In October 2018, this charge was dismissed. Shafer claims that the charge was dismissed for a lack of evidence on behalf of the Commonwealth. (Compl.)

On March 10, 2019, Shafer was indicted for child endangerment. Shafer claims that Strecky lied under oath to obtain an indictment against him. (*Id.* at 2.) On March 14, 2019, Shafer was apprehended by Deputy Toman. Handcuffed in a cell at the Sheriff's Department, Shafer inquired as to the reason for his arrest. When Shafer loudly demanded to be informed of the reason for his arrest, Deputy Cook entered the cell and threw Shafer to the ground, kicking him in the back and grabbing him by his handcuffs. Shafer claims that Toman failed to protect him from Cook's "assault" against him. (*Id.*) Shafer's wrists were injured as a result of the altercation. Additionally, Shafer claims that Sheriff Carter and Strecky gave false information to the newspaper and public to cover up their illegal acts, which in turn caused damage to Shafer's reputation. Shafer claims that his home was robbed of tools and items worth eight thousand dollars when he was arrested because no one was able to protect his property.

---

[3] Plaintiff's motion largely presents arguments in opposition to defendants' motion for summary judgment, which the court has considered in resolving the pending motions. Regarding the request for a hearing, the court finds that a hearing is unnecessary to resolve the pending motions. Finally, plaintiff filed an amended document (Dkt. No. 33), which also contains arguments in opposition to defendants' summary-judgment motion. The court does not construe this document as an amended complaint.

Shafer alleges that Toman and Cook "carried out a conspiracy to cover up [for] Amanda Strecky." (*Id.* at 3). Shafer claims that Toman and Cook lied under oath while they were on the witness stand in General District Court in Woodstock, Virginia.

By way of summary in his complaint, Shafer claims that defendants committed the following crimes and violations: conspiracy to defraud the United States government, assault and battery, obstruction of justice, perjury to a court, fraud, criminal contempt, and civil contempt. (*Id.*) Shafer asks that charges be brought against defendants and seeks damages of twenty million dollars from each defendant.

**B. Undisputed Material Facts**

At all times material to this case, Cook and Toman were deputy sheriffs employed by Sheriff Carter, Sheriff of Shenandoah County.

On March 14, 2019, at 8:30 p.m., Deputy Toman was dispatched to plaintiff's residence in Edinburg, Virginia, to arrest plaintiff on a capias warrant. (Declaration of Houston Hall Toman ¶ 2 (Toman Decl.), Dkt. No. 25-1.) Plaintiff was sitting at his kitchen island, drinking a dark beverage, and smoking a cigarette when Deputy Toman arrived. (*Id.* ¶ 3.) Deputy Toman announced that he had a capias warrant for plaintiff's arrest for a child abuse charge and asked for plaintiff's identification. (*Id.*) Plaintiff complied with this request, and Deputy Toman confirmed plaintiff was the target of the capias. (*Id.*) While running plaintiff's identification through dispatch, plaintiff stated, "I ain't goin' nowhere." (*Id.*)

Deputy Toman again informed plaintiff that he had a capias warrant out for his arrest for cruelty to animals or children. Plaintiff repeatedly responded by shaking his head and saying "I ain't goin' nowhere." (*Id.* ¶ 4.) Deputy Toman tried to reason with plaintiff, but plaintiff insisted, "I ain't going with you. I'm serious. I ain't even walking out that door. This is my

3

house." (*Id.*) He continued to state, "I ain't goin nowhere." (*Id.*) When Deputy Toman tried to explain that the magistrate might let him come home that evening, plaintiff referred to the magistrates as "son of a bitches" and stated that "they tried to play that off the last time." (*Id.*) After a lengthy conversation, Deputy Toman eventually convinced plaintiff to come voluntarily. (*Id.*)

Before Deputy Toman could pat down plaintiff, plaintiff admitted that he had been drinking alcohol that evening; he had a drink sitting in front of him. (*Id.* ¶ 5.) Deputy Toman then patted down plaintiff and handcuffed him with his arms in front because plaintiff eventually decided to cooperate. (*Id.*) Plaintiff maintained enough mobility and use of his hands and arms to turn off his lights before he left the house. (*Id.*)

To process the arrest, Deputy Toman then drove plaintiff to the Sheriff's Office in Woodstock, Virginia, without further incident. (Toman Decl. ¶ 6.) The office includes a holding cell for detainees and a magistrate's office. (*Id.*)

Once inside the Sheriff's Office, plaintiff became increasingly belligerent. (*Id.* ¶ 7.) Due to plaintiff's intoxicated state and his unruly behavior, the magistrate wished to conduct plaintiff's bail hearing from the holding cell. (*Id.*) As the magistrate attempted to conduct the hearing, plaintiff continued to act belligerently and would not answer her questions. (*Id.*) Plaintiff's actions caused the magistrate to terminate the hearing before the magistrate could make a bail determination, requiring plaintiff to spend the night in jail. (*Id.*) Deputy Toman prepared to transport plaintiff to Rappahannock Shenandoah Warren Regional Jail. (*Id.*) Deputy Toman thought that he should reposition plaintiff's handcuffs from front to back in to have better control over plaintiff during transport. (*Id.*)

Because of plaintiff's behavior, Deputy Toman asked Deputy Cook to respond to the

Sheriff's Office to assist with repositioning plaintiff's handcuffs. (Toman Decl. ¶ 8; Declaration of Joshua L. Cook (Cook Decl.) ¶ 2, Dkt. No. 25-3.) When Deputy Cook arrived, Deputy Toman opened the holding cell door and ordered plaintiff to exit the cell. (Toman Decl. ¶ 8; Cook Decl. ¶ 3.) Plaintiff refused, so Deputy Toman advised plaintiff that he would then enter the cell. (*Id.*) Plaintiff raised his cuffed hands, pointed his index fingers at Deputy Toman, and said, "Now, stop. No, you stop." (*Id.*) Deputy Cook then attempted to speak to plaintiff. (*Id.*) Plaintiff cut off Deputy Cook, pointed at him, and stated "No" while raising his voice. (*Id.*) Plaintiff demanded to know why he was still being held. (*Id.*) Deputy Toman attempted to explain that plaintiff was not being released because his unruly behavior prevented the magistrate from conducting the bail hearing. (*Id.*)

Deputy Toman again advised plaintiff that he would be entering the cell. (Toman Decl. ¶ 9; Cook Decl. ¶ 4.) Plaintiff cut him off stating, "No. Don't step in here. None of you," while backing further into the cell. (*Id.*) Seeing that plaintiff was refusing to cooperate, Deputy Cook entered the cell and reached out to take a hold of plaintiff's handcuffs so they could be repositioned. (*Id.*) Plaintiff then shoved Deputy Cook with enough force that he stumbled into Deputy Toman while shouting, "I said get the f—k off me." (*Id.*) Deputy Cook recovered, took a hold of plaintiff's handcuffs, and performed a bare hands takedown maneuver to gain control of plaintiff. (*Id.*) Deputy Cook then held plaintiff to the ground by placing a hand on his shoulder while Deputy Toman manually restrained plaintiff's leg. (*Id.*) Throughout this time, plaintiff continued to shout, "Get the f—k off me." (*Id.*) Deputy Toman exited the cell and called for additional assistance to reposition plaintiff's handcuffs and then called for Woodstock

Rescue Squad medics. (*Id.*)[4]

Deputy Cook realized that both he and plaintiff had sustained injuries from plaintiff's handcuffs during the takedown maneuver. (Cook Decl. ¶ 4.) Deputy Cook also explained to plaintiff that he had assaulted and battered an officer and that plaintiff would be criminally charged. (Cook Decl. ¶ 5.)

Moments later, Woodstock Police Department officers arrived. (Toman Decl. ¶ 11; Cook Decl. ¶ 7.) Deputy Cook assisted plaintiff in standing up by holding his elbow for support. (*Id.*) Deputy Toman and the Woodstock officers assisted in repositioning plaintiff's handcuffs. (*Id.*)

After plaintiff's handcuffs were repositioned, medics from the Woodstock Rescue Squad arrived. (Toman Decl. ¶ 12; Cook Decl. ¶ 8.) The medics treated plaintiff, and the Woodstock Rescue Squad report indicates plaintiff remained agitated throughout the process and continued to shout profanities. (*Id.*) The report also indicates that plaintiff sustained a one-and-one-half (1 ½) inch superficial laceration to his right wrist but that it was no longer bleeding by the time medics treated it. (Prehospital Care Report at 5 of 10, Dkt. No. 22-2.)

\*\*\*

Cook and Toman move for summary judgment on only two claims: (1) plaintiff's claim for excessive force, and (2) plaintiff's claim for violation of the Sixth Amendment. As the court has specifically recognized, plaintiff has alleged more than just these claims against Cook and Toman, and some of those claims survived their motion to dismiss. Thus, while the court will grant Cook and Toman's motion for summary judgment, they will only be granted judgment on

---

[4] Bodycam footage confirms that the foregoing is an accurate description of Deputy Cook's takedown of plaintiff and the events that preceded it. (Toman Decl., Ex. B; Cook Decl., Ex. A; Dkt. No. 25.) *See Iko v. Schreve*, 535 F.3d 225, 230 (4th Cir. 2008) (holding that where the record contains a videotape, plaintiff's version of the facts need only be credited to the extent it is not contradicted by the videotape).

the two claims identified in their motion for summary judgment. The court will not address any of the other claims that remain against Cook and Toman.[5]

## II. ANALYSIS

### A. Defendants' Motion for Summary Judgment

#### 1. Standard of review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Iraq Middle Market Dev't Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.") The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). In opposition to a "properly supported motion for summary judgment," the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There is a genuine issue as to

---

[5] Defendants' motion does mention the assault and battery claims in two footnotes. The court will grant the summary judgment motion as those claims for the reasons stated in defendants' brief. (Dkt. No. 25 at 16 n.4, 20 n.6).

material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**2. Excessive force claim**

As the court recognized in its previous order, "plaintiff's allegation that Deputy Cook threw Shafer to the ground in a jail cell and kicked him in the back could be construed as an excessive force claim under the Fourteenth Amendment. Deputy Toman, who allegedly stood by and did nothing, could be liable as a bystander." (Dkt. No. 31 at 8.) "Claims for the use of excessive force in effectuating an arrest or seizure are governed by the Fourth Amendment's prohibition against unreasonable seizures, and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction the use of excessive force that amounts to punishment." *Dobbs v. Townsend*, 416 F. Supp. 3d 441, 448 (D. Md. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)).[6]

---

[6] The court notes plaintiff's argument that he is not bringing his claims under 42 U.S.C. § 1983. (Dkt. No. 21 at 1.) Section 1983, however, is the appropriate vehicle to redress constitutional violations. The Fourteenth Amendment, for example, "does not create a direct cause of action. Instead, § 1983 provides a statutory cause of action for all citizens injured by an abridgement of the protections contained in the Constitution, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment." *Costello v. Univ. of N. Car.at Greensboro*, 394

Under the Fourteenth Amendment standard, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *see also Wernert v. Green*, 419 F. App'x 337 (4th Cir. 2011). A plaintiff may prevail by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). Factors the court may consider include the relationship between the need for the use of force and the amount of force used; the extent of the detainee's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the detainee was actively resisting. *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).

Plaintiff was resisting arrest prior to the use of force by Deputy Cook. He did so with vulgar threats and then by shoving Cook to the ground. Cook made efforts to temper the amount of force by using a barehand takedown maneuver. Cook did not use any weapons, such as a taser, baton, pepper spray, or a firearm. Plaintiff's laceration was superficial and had stopped bleeding by the time he was treated by medics. It was reasonable for Cook to perceive a threat from plaintiff because plaintiff swore at Cook and then attacked him. Plaintiff also appeared to be under the influence of alcohol. Under these circumstances, Cook's action was rationally related to the legitimate governmental objective of subduing an unruly arrestee, and it was not

---

F. Supp. 2d 752, 759 (M.D.N.C. 2005) (citing *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995), and *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119–20 (1992)). The court does not construe plaintiff's argument as a concession that he cannot state any claims for relief under Section 1983.

9

excessive in relation to that purpose. *See, e.g.*, *Walters v. Cty. of Charleston*, 63 F. App'x 116, 117–18 (4th Cir. 2003) (finding use of force objectively reasonable and tempered where pretrial detainee because violent in his cell, refused to listen to verbal commands, officers used only a bare-hands takedown maneuver, and no weapons were used even where the use of force resulted in the death of pretrial detainee).

As for Toman, he cannot be held liable as a bystander where there is no underlying constitutional violation. *See Randall v. Prince George's Cty.*, 302 F.3d 188, 203 (4th Cir. 2002). Even if there were an underlying violation, Toman had no opportunity to intervene after plaintiff shoved Cook into Toman, forcing Toman out of the cell. *See id.* (stating that liability for failure to intervene can only be imposed where a second officer committed an illegal act, the first officer had an opportunity to intervene, and the first officer chose not to act).

For these reasons, defendants Toman and Cook are entitled to summary judgment on plaintiff's excessive force claim.

### 3. Sixth Amendment claim

Plaintiff alleges that Deputy Toman violated his Sixth Amendment rights by not answering plaintiff's request to be informed of the reason for his arrest and not providing plaintiff with any legal documents at the time of his arrest. There is no constitutional right that requires the police inform an arrestee of the reasons for their arrest. *See, e.g.*, *Delph v. Prince William Cnty.*, 1:20-cv-01086 (LMB/IDD), 2022 WL 1164005, at *5 (E.D. Va. Apr. 19, 2022) (explaining that the Sixth Amendment "does not require an immediate communication of charges upon arrest . . . . Rather, the notice requirement is typically accomplished through a charging document, such as an indictment or information, given to a defendant so that the defendant can prepare for trial") (internal citations omitted). Even if the Sixth Amendment required an

explanation at the moment of arrest, Deputy Toman's bodycam clearly shows that he informed plaintiff he had a capias warrant issued for his arrest based on a child abuse charge. (Toman Decl. ¶¶ 3–4, Ex. A (Toman Bodycam Footage).)  Therefore, Deputies Toman and Cook are entitled to summary judgment on plaintiff's Sixth Amendment claims.[7]

### III.  CONCLUSION

For the reasons stated in this memorandum opinion, Deputies Cook and Toman are entitled to summary judgment on plaintiff's claims that they used excessive force in violation of the Fourteenth Amendment and violated plaintiff's Sixth Amendment rights.  The court will also grant summary judgment on plaintiff's state law assault and battery claims against Cook and Toman.  The court will issue an appropriate order.[8]

Entered: September 12, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[7] Given the court's findings as to plaintiff's federal law claims against Cook and Toman for excessive force in violation of the Fourteenth Amendment and for violation of plaintiff's Sixth Amendment rights, it is not necessary to address defendants' qualified immunity argument.

[8] The claims that remain pending are plaintiff's state law claims for defamation and malicious prosecution against Strecky, plaintiff's federal law claim for covering-up misconduct against Carter, and plaintiff's state law defamation claim against Cook.